To lay a foundation for presuming a grant for land, it is necessary to show an incipient title from the Proprietary; that is, an equitable interest direct from the Proprietary by a located warrant and payment of the composition; or a certificate of survey under a common or other warrant, and payment of the composition, and length of possession consequent on such equitable interest, in the person acquiring the same, and those claiming under him

MUNDELL's Lessee vs. CLERKLEE.

APPEAL from *Prince George's* County Court. Ejectment for a tract of land called *Mundell's Survey*. The defendant, (now appellee,) took defence on warrant, and plots were made.

1. At the trial the plaintiff read in evidence the patent of *Mundell's Survey*, granted to the lessor of

Where the defendant in ejectment offered in evidence certain common warrants granted to N B in 1694, for the surveying several parcels of land; and to prove that the land called *B R*, for which he took defence, was surveyed under the said warrants, and that a patent had been granted therefor to N B, and that the jury ought to presume such patent to have issued, he offered in evidence a deed from N B to J R, dated in 1766, for a parcel of land called *B R*; also certain entries on the rent rolls, showing that *B R* had been surveyed for N B in 1695, and an alienation thereof in 1706 by N B to J R, and that it was afterwards possessed by R L.—Also a deed from J R to R L in 1737, for *B R*, and that R L had paid the quit rents from 1753 to 1772, and the county assessments from 1781 to 1804, and that R L. and his heirs, had been in possession during that time—*Held*, that these facts were not sufficient for the jury to presume a patent issued to N B for the land called *B R*.

1814.

Mundell
vs
Clerkloe

the plaintiff on the 21st of October 1803, and a patent for *Beall's Reserve*, dated in 1695, granted to *Mordecai Moore*, reciting, that the said *Moore* had set forth that he had assigned unto him by *Ninian Beall*, of *Calvert* county, a certain tract of land for 455 acres in *Calvert* county, surveyed for the said *Beall* the 25th of July 1684, and that the surveyor, in returning the said certificate of said land, had through mistake certified, that said land was laid out for said *Beall* by virtue of a warrant for 1000 acres, granted to him the 15th of February 1683, whereas in reality the warrant then granted to him, and by virtue whereof the said land was laid out, was for 1500 acres, by means of which mistake of the surveyor, the said *Beall's* grant of said land had been delayed to be passed. That the said *Moore* had made it evidently appear, that the said 455 acres were surveyed for said *Beall* by virtue of a warrant for 1500 acres granted him on the said 15th of February, there being so much of the said warrant no otherwise made use of, and no warrant for 1000 acres of that date being granted to the said *Beall*. Wherefore, it appearing palpably that it was merely the mistake of the surveyor in inserting in his certificate the words 1000 only, in lieu of 1500, and that the said *Moore* prayed that the mistake might be rectified, and a grant to him made pursuant to the said *Beall's* assignment, &c. Therefore there was granted to the said *Moore* all that tract or parcel of land called *Beall's Reserve*, lying in *Calvert* county, on the west side of *Patuxent* river, and in the freshes of the said river, and on the west side of a branch called *Collington*, and on the west side of *Edward Isaac's* land, beginning, &c. containing 455 acres. He further gave in evidence, that his locations on the plots in the cause were correct. The defendant then read in evidence the following extracts from the land office, of three several warrants having issued to *Ninian Beall*, to wit: "May 23, 1694. Warrant for 3000 acres, dated the 18th of July 1689, granted to *Ninian Beall* of *Calvert* county, this day renewed for the said quantity. December 20, 1694. Warrant then granted to *Ninian Beall* for 1673 acres of land, due to him by renewment of that quantity out of a warrt. for 3000 acres, granted him by renewment the 23d of May 1694. September 21, 1695. Warrant then granted *Ninian Beall* of *Calvert* county, for 400 acres of land, being due

to him by renewal of part of a warrant for 1673 acres of land, granted him by renewment the 20th of December 1694." And to prove that *Beall's Reserve*, the land for which the defendant took defence, was surveyed in virtue of the said warrants, and that the same had been patented to said *Ninian Beall*, and that the jury might and ought to presume such patent to have issued, he also offered in evidence a deed from said *Ninian Beall* to *James Ranton*, dated the 15th of July 1706, for all that tract or parcel of land called *Beall's Reserve*, lying in *Prince George's* county, on the west side of *Patuxent* river, in the woods, and on the east side of the main branch of *Piscataway*, beginning at a bounded white oak, being the S W bounded tree of a parcel of land surveyed for *Thomas Brooke*, called *The Forest*, thence S S W 320 ps. to a bounded white oak, thence E S E 200 ps. thence N N E 320 ps thence with a straight line to the first bounder, containing 400 acres more or less. And also read in evidence the following entries from the rent rolls, to wit: "400 acres, 16s rent. *Beall's Reserve* sur. 17 June 1695, for Col. *Nin. Beall* beg. at a bd. oak of the land called——. Poss. Col. *Nin Beall*. 400—16—*James Rantin*, from *Ninian Beall* 15th July 1706. 400—16—*Beall's Reserve*, surveyed 17th of June 1695, for Col. *Ninian Beall*, beg. at a bound oak—Poss. 400—0 16 0. *Richard Lee*, esq." Also a deed from the said *James Ranton* to *Richard Lee*, dated the third of August 1737, for all that tract or parcel of land called *Beall's Reserve* lying in *Prince George's* county aforesaid, and adjoining to a parcel of land belonging to *Thomas Brookes*, called *Potomak Forest*, containing 400 acres of land more or less. Also extracts from *Prince George's* county debt book, showing that part of *Beall's Reserve*, 400 acres, was charged to *Richard Lee*, from the years 1753 to 1772, inclusive. And to prove that *Richard Lee* had, and those claiming under him have been in the possession and the use of said land, proved by competent witnesses, that for a number of years past, and as far back as the recollection of the witnesses extended, that said land had been cultivated and used by said *Lee*, and his tenants, and that no person, to the knowledge of the witnesses, had possessed any part of said land, except said *Richard Lee*, and those claiming under him, claiming the same as *Beall's Reserve*, but that

a part of *Beall's Reserve*, as located by defendant, and so much thereof as was comprehended within the lines of *The Plains of Shrewsbury Resurveyed*, as located on the plots, had been in the continued possession, use and occupation, of the owners of said last mentioned tract of land, from about the time of the same being taken up. It was further proved, that *Richard Lee*, under whom the defendant claimed, lived at this time about 30 or 40 miles from said land, and that *Russell Lee*, his heir, was a minor, and died under the age of 21 years; and that the witnesses, who were about the age of sixty years, lived on the adjoining land. And to prove that *Richard Lee*, and those claiming under him, had been charged with and paid assessments for said land, the defendant offered in evidence the assessment lists of *Prince-George's* county for several years; by which it appeared that in 1781 and 1782, part of *Beall's Pasture*, 400 acres, was assessed to *Richard Lee*. In 1783 part of *Beall's Plains*, by resurvey 400 acres, was assessed to him. In 1786 part of *Beall's Pleasure*, 400 acres, tenanted to *Saml. Townsend*, was assessed to him. In 1793, 1798 and 1804, *Beall's Reserve*, 400 acres, was assessed to his heirs. And to prove that the land stated in the assessment books, and the land included in the deed from *Ninian Beall*, and referred to in the rent rolls and debt books, were the same, the defendant offered in evidence, that *Beall's Reserve*, as located by him, was situated in the hundred of *Prince-George's* county, distinguished by *Grub* Hundred, from which the said extracts are taken, and that the said *Richard Lee* had no land called *Beall's Pasture, Beall's Plains* or *Beall's Pleasure*, unless *Beall's Reserve* had acquired those names by reputation. And also offered in evidence, that *Richard Lee*, and those claiming under him, had paid the taxes on the whole of *Beall's Pasture*, and that the same had not been assessed to any other person, and that the whole tract was generally understood to be the property of said *Lee*, and those claiming under him. And also offered in evidence, the following certificates of adjoining surveys, and which were truly located by the defendant, viz. *Potomack Landing*, surveyed the 5th of April 1685: *The Forest*, surveyed the 5th of September 1694: *Shrewsbury Plains*, surveyed the 2d of October 1719: *The Widow's Trouble*, surveyed the 15th of January 1732–3: *Blacklock's Venture*, surveyed the

1814.

Mundell
vs
Clerklee

1814.

Mundell
vs
Clerkles

15th of December 1755; and *The Plains of Shrewsbury,* sur-
veyed the 25th of January 1772. It was also proved, that
the record books of the land office had been searched, and
no patent for the land called *Beall's Reserve,* for which the
defendant took defence, could be found; nor any certificate
for the same. And further, that the record book for pa-
tents and certificates, recorded in the year 1695, was in
the land office. The following testimony was also by con-
sent admitted: The deposition of *John Callahan,* who de-
posed, that "previous to the year 1700, the register of the
land office did not record, as it appears by the old record
books in his office, the payment made by the party of the
composition money for lands surveyed for such party, or
make any marginal note in the record of the certificate of
such payment, whether the certificate was made upon a
warrant of resurvey, or whether the certificate, when re-
turned, included more land than was expressed upon the
warrant or warrants upon which the same was made. That
in the year 1679, and before and after, as far down as the
year 1700, there are many certificates for lands surveyed
for different persons, recorded in the land office, upon
which it cannot be found that there is or are any patent or
patents recorded in said office. That it is, and always has
been, customary to recite in the patent or grant, when is-
sued, the consideration upon which the same issued, and
the manner in which the composition money for the land
mentioned in such grant was paid. That since the revolu-
tion several old patents, granted between the years 1678
and 1701, as far back as the year 1682, which were in the
hands of those holding under the patentee therein named,
and which had never before been recorded in the land of-
fice, have been produced to him to be recorded, and have
been recorded; that it has sometimes happened to himself,
since he has been in office, that the person for whom a pa-
tent was made out, took it to the governor to procure his
signature, and having obtained it, never returned the patent
to him to be recorded, whereby it happened that a patent
in such case did regularly issue, and yet there was and is
no record of it in his office. That for near thirty years
last past, he has from time to time, frequently heard a re-
port, that one of the old record books in the Proprietary
land office, containing the record of patents, has been
lost. That the record books in the land office refer from

1814.

Mundell
vs
Clerklee

one to the other, and that he never found a reference to any record book which is not to be found in the office, and that he from thence is of opinion no record book has been lost out of said office, burnt or destroyed. Also the deposition of *John Brewer*, who dep osed, that he was and at present is an assistant clerk to *John Kilty*, register of the land office, and had for eleven years last past been clerk in said office, acting for many years in said office as a clerk to *John Callahan*, the register of said office, and that he never heard or understood that any record book belonging to said office had been lost or missing of late years. He never heard or understood that any record book of said office had been lost during the revolutionary war, or at any period shortly before. That Mr. *Callahan*, now dead, informed him, that he had never seen in the office a reference to a book in the office which he could not find; that seeing a record book of certificates in the office for a number which he could not find patents, he was sometimes induced to believe a record book of patents might have been lost; but on the whole he thought no book was lost. That the warrants are all recorded in different books from the books in which the certificates and grants are recorded, and he never heard, nor from many years examination of the records has he any reason to believe, that any record book of warrants was lost. The defendant also offered in evidence the warrants and the rent rolls aforesaid, together with the other evidence offered by him, to prove that the said *Beall* was in the possession of the land until his conveyance to *James Ranton;* and to prove that *Ranton* also possessed the same until his conveyance to *Lee*. And also gave in evidence, that *Russell Lee*, the grandson and heir at law, died without having issue, and leaving *Sarah Russell Contee, Ann Lee, Eleanor Benson* and *Margaret Clerklee*, the wife of the defendant, his heirs at law. The defendant then prayed the opinion of the court, and their direction to the jury, that if they find the several facts as stated by the defendant to be true, that then, although they find the facts stated by the plaintiff to be true, they may and ought to presume a patent issued for *Beall's Reserve*, and as contained in the before mentioned deed from *Beall* to *Ranton;* and if they find the location of the deed as made by the defendant to be true, that then they ought to find a verdict for the defendant.

This opinion and direction the Court, [*Key* and *Clarke*, A... J.] gave to the jury. The plaintiff excepted.

2. The plaintiff then prayed the opinion of the court, and their instructions to the jury, that the evidence in this cause was insufficient to justify the jury in presuming that a grant was issued to *Ninian Beall* for *Beall's Reserve*. But the court refused to give such instructions. The plaintiff excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before CHASE, Ch. J. and NI-CHOLSON, and EARLE, J.

*Key, Shaaff* and *Magruder*, for the Plaintiff, contended, that there was no case where the court had directed the jury to presume a grant where there had been no certifi-cate of survey, composition paid, and possession held under it. They referred to *Hull's Lessee vs. Gough*, 1 *Harr. & Johns.* 119. *Cockey's Lessee vs. Smith*, *ante* 20; and *Kelly' Lessee vs. Greenfield*, 2 *Harr. & M'Hen.* 121.

*Martin*, for the Appellee, cited *Lloyd vs. Gordon*, 2 *Harr. & M'Hen.* 254. *Carroll, et al. Lessee vs. Norwood*, 4 *Harr. & M'Hen.* 287. *S. C.* 5 *Harr. & Johns.* 155; and *The Mayor of Kingston upon Hull vs. Horner*, 1 *Cowp.* 102.

CHASE, Ch. J. delivered the opinion of the court. The court are of opinion, that the court below erred in direct-ing the jury to presume a patent issued for *Beall's Re-serve*, as contained in the deed from *Beall* to *Ranton*, on the facts and circumstances stated by the defendant.

The court are of opinion, that to lay a foundation for the court to direct the jury to presume a patent from the Pro-prietary to any person, it is necessary to show an incipient title from the Proprietary; that is an equitable interest de-rived from the Proprietary by a located warrant, and pay-ment of the composition; or a certificate of survey on a common or other warrant, and payment of the composition, and a length of possession consequent on such equitable interest in the person acquiring the same, and those claim-ing under him.

In this case it appears that the origin of the defendant's title to *Beall's Reserve*, is the deed from *Ninian Beall* to *James Ranton*, and that all the facts and circumstances

subsequent to the date of the said deed, with the possession in *Richard Lee*, and those claiming under him, are deducible from the same source—the deed from *Beall* to *Ranton*,—and in that manner may be accounted for. *Richard Lee*, and those claiming under him, were intruders on the Proprietary, and their possession tortious, consequently the defendant can derive no aid from such possession, as a constituent part of the grounds on which the prayer to the court to direct the jury to presume a patent issued for *Beall's Reserve*, was founded.

The court dissent from the opinions of the court below in both the bills of exceptions.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.